# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

## CASE NO. 25-12282

_____

DAWN PLAGIANES,

*Appellant*,

v.

FULTON COUNTY SCHOOL DISTRICT,

*Appellee*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
HONORABLE JEAN-PAUL BOULEE
(1:24-cv-03775-JPB-JSA)

_____

## APPELLANT'S INITIAL BRIEF

_____

Anthony J. Hall
Jordan P. Rose
The Leach Firm, P.A.
1560 N. Orange Avenue
Suite 600
Winter Park, FL 32789
(407) 574-4999
(321) 594-7316 (facsimile)
ahall@theleachfirm.com
jrose@theleachfirm.com

**C-1**

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Appellant/Plaintiff Dawn Plagianes, pursuant to FRAP 26.1 and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, hereby files her Certificate of Interested Persons and Corporate Disclosure Statement:

1. Judge J.P. Boulee (United States District Court Judge)

2. Jeffrey Robert Daniel (Defendant - Appellee Attorney)

3. Fulton County School District (Defendant - Appellee)

4. Anthony J. Hall (Appellant - Plaintiff Attorney)

5. Brandon O. Moulard (Appellee - Defendant Attorney)

6. Dawn Plagianes (Appellant - Plaintiff)

7. Jordan P. Rose (Appellant - Plaintiff Attorney)

8. U.S. Equal Employment Opportunity Commission

**C-2**

## STATEMENT REGARDING ORAL ARGUMENT

Appellant/Plaintiff Dawn Plagianes believes that oral argument will assist the Court's disposition of this case, therefore, she respectfully requests oral argument under Fed. R. App. P. 34(a).

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT……………….…………….…C-1

STATEMENT REGARDING ORAL ARGUMENT……………….……..…C-2

TABLE OF CONTENTS……………….………………………………………..i

TABLE OF AUTHORITIES……………….………………………………...iii

STATEMENT OF JURISDICTION……………….…………………………vii

STATEMENT OF THE ISSUES……………….……………………….....1

STATEMENT OF THE CASE……………….………………………….......1

STATEMENT OF THE FACTS……………….………………….….....3

STANDARD OF REVIEW……………….………………………............10

SUMMARY OF ARGUMENT……………….………………….............10

ARGUMENT……………….……………….......................................12

    I.    THE DISTRICT COURT ERRED BY FINDING THAT
           PLAGIANES' CLAIMS WERE BARRED FOR FAILURE TO
           EXHAUST HER ADMINISTRATIVE REMEDIES………………14

           A. The District Court erred by failing to analyze, and subsequently
               find that the end of Plagianes' employment constituted a
               constructive discharge……………….…………….................16

           B. Equitable tolling should be applied in this case............................26

CONCLUSION……………….………………….................................30

CERTIFICATE OF COMPLIANCE…………….…………………….................32

CERTIFICATE OF SERVICE……….…………….……………………...............33

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................12, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).......................................12, 22

*Brackett v. TSE Indus., Inc.*, 2023 U.S. Dist. LEXIS 226338
(M.D. Fla. 2023)..................................................................................17

*Brooks v. Powell*, 800 F.3d 1295 (11th Cir. 2015)....................................................10

*Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008).......................................................14

*Burks v. Wellstar Health Sys., Inc.*, 2024 U.S. Dist. LEXIS 237274
(N.D. Ga. 2024)...................................................................................17

*Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334 (11th Cir. 2006).......................10

*Chawla v. Emory Univ.*, 1997 U.S. Dist. LEXIS 23595 (N.D. Ga. 1997)..............25

*Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223
(N.D. Ga. 2013)…...............................................................................13, 14

*Conley v. Gibson*, 355 U.S. 41 (1957)......................................................................12

*Davis v. Legal Servs. Alabama, Inc.*, 19 F.4th 1261 (11th Cir. 2021).....................17

*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005)........................................................13

*Delaware State College v. Ricks,* 449 U.S. 250, 66 L. Ed. 2d 431,
101 S. Ct. 498 (1980)…………………………………………………17

*Doe ex rel. Doe #6 v. Swearingen*, 51 F.4th 1295 (11th Cir. 2022)………………18

*Doe v. DeKalb Cty. School Dist.*, 145 F.3d 1441 (11th Cir. 1998)……………......20

*E.E.O.C. v. Summer Classics, Inc.*, 471 F. App'x 868 (11th Cir. 2012).................15

*Fowler v. Atlanta Pub. Schs.*, 2019 U.S. Dist. LEXIS 249362
    (N.D. Ga. 2019)..................................................................................20, 21, 22

*Graton v. Owens*, No. 7:09-CV-99 HL, 2010 WL 3123159
    (M.D. Ga. 2010)..................................................................................14

*Grayson v. K Mart Corp.*, 79 F.3d 1086 (11th Cir. 1996).....................................29

*Green v. Brennan*, 136 S. Ct. 1769 (2016).........................................................18, 25

*Hargray v. City of Hallandale*, 57 F.3d 1560 (11th Cir. 1995)...................22, 23, 24

*Hellums v. Webster Indus., Inc.*, 97 F. Supp. 2d 1287 (M.D. Ala. 1998)................20

*Hernandez v. Prudential Ins. Co. of Am.*, 977 F. Supp. 1160
    (M.D. Fla. 1997)..................................................................................19

*Hicks v. City of Tuscaloosa, Ala.*, 870 F.3d 1253 (11th Cir. 2017).........................20

*Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518 (11th Cir. 1991).............................19

*Hipp v. Liberty Nat'l Life Ins.*, 252 F.3d 1208 (11th Cir. 2001).......................18, 19

*Holland v. Florida*, 560 U.S. 631 130 S. Ct. 2549,
    177 L. Ed. 2d 130 (2010)……………………………………………….27

*Horsley v. Feldt*, 304 F.3d 1125 (11th Cir. 2002)...................................................13

*Howard v. City of Coll. Park*, 2023 U.S. Dist. LEXIS 188260
    (N.D. Ga. 2023)…………………….............................................................15

*Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992 (11th Cir. 1982).............16

*Jimenez v. U.S. Att'y Gen.*, 2025 U.S. App. LEXIS 18028
    (11th Cir. 2025)..................................................................................18

*Justice v. United States*, 6 F.3d 1474 (11th Cir. 1993)……..………………….....27

*Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752 (11th Cir. 1996)…..........19

iv

*LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840 (11th Cir. 2004)..........................26

*Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750 (2016)........26, 27

*Menzie v. Ann Taylor Retail Inc.*, 549 F. App'x 891 (11th Cir. 2013)…………….17

*Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993).......................................................22

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).....................15, 18, 19

*Pearson v. Macon-Bibb Cnty. Hosp.*, 952 F.2d 1274 (11th Cir. 1992)...................30

*Perry v. Harris Chernin, Inc.*, 126 F.3d 1010 (7th Cir. 1997)...............................19

*Powell v. Thomas*, 643 F.3d 1300 (11th Cir. 2011)..................................................13

*Ross v. City of Perry*, 396 F. App'x 668 (11th Cir. 2010)........................................22

*Scott v. Lee County Youth Dev. Ctr.*, 232 F. Supp. 2d 1289
   (M.D. Ala. 2002).................................................................................17, 25

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334
   (11th Cir. 2010).........................................................................................13

*Tillery v. U.S. Dep't of Homeland Sec.*, 402 F. App'x 421 (11th Cir. 2010)..........13

*Traylor v. P'ship Title Co.*, 491 F. App'x 988 (11th Cir. 2012)..............................12

*Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958 (11th Cir. 2016)...............26

*Wardwell v. Sch. Bd.*, 786 F.2d 1554 (11th Cir. 1986)............................................19

*Williams v. Ala. Dep't of Corr.*, 649 F. App'x 925 (11th Cir. 2016)..........22, 23, 24

*Wilkerson v. Grinnell Corp.*, 270 F.3d 1314 (11th Cir. 2001)................................15

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)......................................26

v

## Statutes

28 U.S.C. § 1291.............................................................................................vii

28 U.S.C. § 1331.............................................................................................vii

28 U.S.C. § 1343.............................................................................................vii

29 U.S.C. § 2601 *et. seq.*..........................................................................vii, 2

42 U.S.C. § 12101 *et. seq.*........................................................................vii, 2

42 U.S.C. § 12117...........................................................................................vii

42 U.S.C. § 2000e(k)........................................................................................20

## Rules

FRAP 26.1…...................................................................................................C-1

FRAP 32(a)(7)(B)(i)........................................................................................32

FRAP 32(g)…….............................................................................................32

FRAP 34(a)…….............................................................................................C-2

FRCP 8(a)(2)....................................................................................................12

FRCP 12(b)(6)..........................................................................10, 13, 14, 17, 22

11th Cir. R. 26.1-1, 26.1-2, 26.1-3................................................................C-1

## STATEMENT OF JURISDICTION

Appellant/Plaintiff Dawn Plagianes' claims arose under the Americans with Disabilities Act of 1990, as amended ("ADAAA"), 42 U.S.C. § 12101 *et. seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq*. The District Court had subject matter jurisdiction pursuant to 42 U.S.C. § 12101 *et. seq.,* 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 12117. This Court has Appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

A. Whether the District Court erred in determining that Appellant/Plaintiff's claims were barred for failure to exhaust EEOC administrative remedies.

B. Whether the District Court erred by failing to address Appellant/Plaintiff's separation of employment under a constructive discharge analysis.

C. Whether the District Court erred by failing to address Appellant/Plaintiff's separation of employment under an involuntary resignation analysis.

D. Whether the District Court erred in determining that Appellee/Defendant's adverse decision to end Appellant/Plaintiff's did not constitute a continuing violation.

E. Whether this Court may apply equitable tolling to this case.

F. Whether Appellant/Plaintiff sufficiently demonstrates that Appellee/Defendant's conduct warrants equitable tolling in this case, and if so, whether the application of equitable tolling results in the exhaustion of EEOC administrative remedies by Appellant/Plaintiff in regards to her remaining claims.

## STATEMENT OF THE CASE

On August 26, 2024, Appellant/Plaintiff, Dawn Plagianes (hereinafter "Plagianes" or "Appellant"), filed a complaint against Appellee/Defendant, Fulton County School District (hereinafter "Appellee") alleging that Appellee violated her

rights under the Americans with Disabilities Act of 1990, as amended ("ADAAA"), 42 U.S.C. § 12101 *et. seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.* [Doc. 1]. Specifically, Appellant alleged disability discrimination and retaliation in violation of the ADAAA, and interference and retaliation in violation of the FMLA. [Doc. 1].

On November 7, 2024, Appellee filed its Motion to Dismiss. [Doc. 8]. On November 21, 2024, Plagianes timely responded by filing her Response in Opposition to Defendant's Motion to Dismiss and Plaintiff's Motion for Leave to File Amended Complaint. [Doc. 9]. Appellee filed its Reply in Support of its Motion to Dismiss on December 4, 2024. [Doc. 10]. The District Court issued its Final Report and Recommendation ("R&R") on April 25, 2025, with the following recommendation:

> For the reasons discussed, **IT IS RECOMMENDED** that Defendant's Motion to Dismiss [8] be **GRANTED. IT IS RECOMMENDED** that Plaintiff's claims be **DISMISSED with prejudice** on grounds of untimeliness.
>
> In the alternative, if on review Plaintiff's ADA claims are found to be timely exhausted, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [8] be **DENIED**, as to Plaintiff's Failure to Accommodate claim (Count II), and **GRANTED** as to Plaintiff's claims of Discrimination (Count I) and Retaliation (Count III).
>
> As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.
>
> [Doc. 12, R&R at pp. 27-28] (emphasis in original).

Plagianes timely submitted her objections to the District Court's R&R on May 9, 2025. [Doc. 14]. Appellee submitted its Response to Plaintiff's Objections to the Magistrate Judge's Final Report and Recommendation on May 21, 2025. [Doc. 15]. The District Court entered an order granting Appellee's Motion to Dismiss [Doc. 8], adopting the Final R&R [Doc. 12], and dismissing the action with prejudice. [Doc. 16]. That order [Doc. 16] is the subject of this timely-filed appeal. [Doc. 18].

## STATEMENT OF THE FACTS

Dawn Plagianes was hired as a teacher by Appellee on August 24, 2014. [Doc. 1, Compl. ¶ 25; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 24]. Appellee originally assigned Plagianes to teach at Banneker High School, but approximately two years later, Appellee transferred Plagianes to McNair Middle School, where she worked until July 31, 2021. [Doc. 1, Compl. ¶¶ 26, 51; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 25, 60]. She held this position at the time of her constructive discharge via forced resignation by Appellee. *See id*.

On September 10, 2020, Plagianes began experiencing medical difficulties related to a prior cancer diagnosis. [Doc. 1, Compl. ¶ 27; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 26]. As a result, Plagianes sought an accommodation from Appellee to work remotely. [Doc. 1, Compl. ¶ 28; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 27]. On September 14, 2020, Plagianes' physician, Dr. Michelle Cooke, provided correspondence to Appellee's Human Resources Department

3

requesting that the Plagianes be allowed to work virtually. [Doc. 1, Compl. ¶ 29; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 28]. This September 2020 request for a reasonable accommodation suggested two potential accommodations: First, it sought remote work indefinitely; alternatively, it requested that Plagianes avoid in-person work for the 2020-2021 school year at the very least. [Doc. 9-1, Am. Compl. ¶ 29].

On or about September 17, 2020, Plagianes fell ill and was experiencing COVID symptoms, and because of her already compromised immune system, the Appellee's nurse sent her home. [Doc. 1, Compl. ¶ 30; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 30]. Subsequently, Plagianes tested positive for COVID and applied for the Appellee's allotted 10-day COVID sick day policy. [Doc. 1, Compl. ¶ 31; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 31]. In addition, a representative from the Appellee's Leave Office sent Dr. Cooke the necessary documentation to complete for Plagianes to seek FMLA leave. [Doc. 1, Compl. ¶ 32; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 32]. Plagianes was advised by the Appellee's Leave Office representative that she had to report to work until her FMLA leave request was either approved or denied. [Doc. 1, Compl. ¶ 33; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 33]. Plagianes' FMLA leave request was granted from September 21, 2020, until October 19, 2020. [Doc. 1, Compl. ¶ 34; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 34].

While Dr. Cooke was adamant in her requests for Plagianes to continue working for Appellee in a virtual capacity due to her prior medical conditions being exacerbated by COVID, Plagianes was required to report back to in-person work on October 20, 2020. [Doc. 1, Compl. ¶ 35; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 35]. In light of this, Plagianes further informed her supervisor, Principal John Madden, of the accommodations request and further inquired if there would be an issue working virtually going forward. [Doc. 1, Compl. ¶ 36; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 36]. Mr. Madden assured her that it would not be an issue, and to make sure the Appellee's Leave Office had the necessary paperwork. *See id*. Nonetheless, Eddie Breaux, Appellee's Human Resources Staffing Director, contacted Plagianes via email stating that despite the documentation from Dr. Cooke, Plagianes still had to report to work in person. [Doc. 1, Compl. ¶ 37; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 37]. He informed her that approving the virtual request "would take time." *See id*.

On October 19, 2020, Breaux advised Plagianes that Appellee could not accommodate her physician-recommended request to work virtually. [Doc. 1, Compl. ¶ 38; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 38]. Breaux further stated that Appellee would provide her with a shield to place around her desk, as well as extra cleaning supplies. *See id*. Since Plagianes' condition had not sufficiently improved to allow her to return to work in person, she requested

additional medical leave, which was granted by Appellee. [Doc. 1, Compl. ¶ 39; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 39]. As a result, Plagianes took additional FMLA leave from October 20, 2020, through November 10, 2020, with an anticipated return-to-work date of November 11, 2020. [Doc. 1, Compl. ¶ 40; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 40].

In December 2020, Plagianes submitted a second reasonable accommodation request to Appellee that contained two options as well. [Doc. 9-1, Am. Compl. ¶ 41]. This request sought remote work for the duration of the COVID-19 pandemic. *See id*. Alternatively, it requested that Appellee grant Plagianes an extended medical leave through the remainder of the 2020-2021 school year. *See id*. Despite Dr. Cooke's constant communication with Appellee regarding the need to allow Plagianes to work virtually due to her compromised medical condition and substantial risk of contracting COVID, Appellee refused to grant the accommodation. [Doc. 1, Compl. ¶ 41; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 42]. Instead, Appellee suggested that Plagianes apply for short term disability ("STD"), which she did in approximately December 2020. [Doc. 1, Compl. ¶ 42; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 43]. However, Plagianes' STD request was subsequently denied by Hartford Insurance. [Doc. 1, Compl. ¶ 43; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 44].

As a result of the STD denial, Appellee placed Plagianes on leave without pay in relation to her ADAAA-qualifying disabilities from November 11, 2020, through March 17, 2021, with a return-to-work date of March 18, 2021. [Doc. 1, Compl. ¶¶ 44-45; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 45-46]. Plagianes had to pay $300/month to retain her health insurance during this period. [Doc. 1, Compl. ¶ 46; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 47].

In March 2021, Plagianes worked with Dr. Cooke to develop another reasonable accommodation request to submit to Appellee. [Doc. 9-1, Am. Compl. ¶ 48]. Since a COVID vaccine had been made available by that time, and Plagianes already scheduled herself to receive two doses of the vaccine, the resulting reasonable accommodation request would relate to her vaccine schedule. *See id.*

On or around March 16, 2021, Plagianes received a call from Breaux confirming her return-to-work date. [Doc. 1, Compl. ¶ 47; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 49]. Plagianes informed Breaux that she was scheduled to receive the COVID vaccine in two doses and would return to in-person work immediately thereafter. *See id.* The first dose was scheduled to be administered on March 22, 2021, while the second dose was scheduled for April 12, 2021. *See id.*

Also during this call with Breaux, Plagianes requested a reasonable accommodation in light of her COVID vaccine schedule. [Doc. 9-1, Am. Compl. ¶ 50]. Specifically, Plagianes requested a reasonable accommodation from Appellee

7

where she would either be allowed to work remotely or be placed on a temporary leave of absence from March 18, 2021 until the date in which she was to receive her second vaccine dose, April 12, 2021, and then immediately return to in-person work. *See id*.

Appellee did not further discuss the March 16, 2021, reasonable accommodation request with Plagianes, nor did it suggest or explore alternative accommodations. [Doc. 9-1, Am. Compl. ¶ 51]. Instead, several weeks later, Plagianes received a call from Appellee's legal counsel, who stated that Appellee was no longer going to allow her to return to work. [Doc. 1, Compl. ¶ 48; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 52]. Moreover, Appellee's legal counsel informed Plagianes that she had the following three available options regarding her employment: 1) resign; 2) medically resign; or 3) be subject to termination. Said counsel stated that Plagianes had one (1) day to decide on which option to choose. [Doc. 1, Compl. ¶ 49; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 53].

Appellee's legal counsel did not state whether any of the three options would go into effect immediately. [Doc. 9-1, Am. Compl. ¶ 54]. However, said counsel informed Plagianes that submitting a medical resignation to Appellee would allow her to obtain unemployment benefits, while a termination would not. *See id*. In addition, said counsel informed Plagianes that a termination would go on her

8

permanent record, which would essentially preclude her from obtaining future employment as a teacher. *See id*.

When Plagianes questioned Appellee's legal counsel about why she would face termination when there were no disciplinary issues, Appellee agreed with Plagianes regarding her lack of disciplinary history, but ultimately stated that this was the decision made by Appellee. [Doc. 1, Compl. ¶ 50; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 55]. Notably, Plagianes was not represented by counsel at the time of her conversation with Appellee's legal counsel, nor at the time in which she chose one of the three available employment options. [Doc. 9-1, Am. Compl. ¶ 56].

Plagianes chose the medical resignation option and submitted a letter to Appellee's legal counsel on April 12, 2021, stating same. *See id*. at ¶ 57. In choosing the medical resignation option, Plagianes did not know whether a medical resignation would ultimately end her employment with Appellee, or if it would be revoked by Appellee once she received her second COVID-19 vaccine dose on April 12, 2021. *See id*. at ¶ 58. Several months later, on or around July 11, 2021, Plagaines submitted a claim for unemployment insurance benefits to the Georgia Department of Labor, which was subsequently denied. *See id*. at ¶ 59. Ultimately, Plagianes was constructively discharged from her position via forced resignation effective July 31, 2021. [Doc. 1, Compl. ¶ 51; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 60].

## STANDARD OF REVIEW

The standard of review of a dismissal for failure to state a claim upon which relief may be granted is *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Fed. R. Civ. P. 12(b)(6); *Castro v. Sec'y of Homeland Sec.*, 472 F.3d 1334, 1336 (11th Cir. 2006). The denial of a motion to amend is reviewed for abuse of discretion, while the futility of a motion to amend is reviewed *de novo. Brooks v. Powell*, 800 F.3d 1295, 1300 (11th Cir. 2015). A denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal. *Id.*

## SUMMARY OF ARGUMENT

Plagianes, a former teacher for Appellee, was consistently recommended by her primary care physician to work virtually due to her compromised medical condition and substantial risk of contracting COVID during the 2020-2021 school year. [Doc. 1, Compl. ¶¶ 29, 35, 41; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 35, 41-42, 48-50]. Plagianes submitted multiple reasonable accommodations requests to Appellee regarding same. [Doc. 1, Compl. ¶¶ 27, 41; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 27, 41, 50]. However, her final accommodations request in March 2021 was not only unlawfully denied by Appellee, it led to the constructive discharge of Plagianes' employment on July 31, 2021 following a phone

10

call with Appellee's legal counsel in April 2021. [Doc. 1, Compl. ¶¶ 47-51; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 48-60].

Plagianes filed her Charge with the EEOC on January 5, 2022. In Plagianes' Charge, she states, in part, that she "was constructively discharged from [her] position via forced resignation effective *7/31/2021*[.]" *See* [Doc. 8-2 at p. 2 (emphasis supplied)]. Moreover, in the "DATE[S] DISCRIMINATION TOOK PLACE" section of Plagianes' Charge, she notes that the latest discriminatory action took place on "*7/31/2021*." *See* [Doc. 8-2 at p. 1 (emphasis supplied)]. Nonetheless, Appellee contends that Plagianes employment ended in April 2021, therefore, her claims were not timely asserted and she failed to exhaust administrative remedies. *See* [Doc. 8, generally].

The District Court erred in determining that Plagianes' claims were barred for failure to exhaust EEOC administrative remedies because the end of her employment was a constructive discharge that occurred in July 2021, and further, said constructive discharge was a continuing violation that results in the last discriminatory act falling within the EEOC statutory filing period. The District Court also erred by failing to address Plagianes' separation of employment under a constructive discharge analysis. Finally, Appellee's legal counsel's misleading statements to Plagianes during their April 2021 phone call warrants the application of equitable tolling in this case, which also results in the exhaustion of EEOC

11

administrative remedies. Accordingly, the District Court's findings should be reversed and remanded.

## **ARGUMENT**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. *Id*. Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citation omitted). In other words, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *id*., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Traylor v. P'ship Title Co.*, 491 F. App'x 988, 990 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a court

need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations. *See Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011); *see also Iqbal*, 556 U.S. at 678.

When a court is considering a motion to dismiss under Rule 12(b)(6), documents attached to the motion to dismiss may be considered if the document is both central to the plaintiff's claim and its contents are undisputed. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1228-29 (N.D. Ga. 2013) (considering document filed with the Equal Employment Opportunity Commission ("EEOC") without converting a motion to dismiss to a motion for summary judgment, stating "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute"). "'Undisputed' means that the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276.

Moreover, when considering a Rule 12(b)(6) motion to dismiss for failure to exhaust administrative remedies, such as the present matter, "'it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.'" *Tillery v. U.S. Dep't of Homeland Sec.*, 402 F.

App'x 421, 424 (11th Cir. 2010) (unpublished) (quoting *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)); *see also Graton v. Owens*, No. 7:09-CV-99 HL, 2010 WL 3123159, at \*1 (M.D. Ga. July 13, 2010) (noting that "[t]he Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case" (citing *Bryant*, 530 F.3d at 1376–77)), *adopted by* 2010 WL 3123139 (M.D. Ga. Aug. 9, 2010). In particular, "the EEOC charge is a document that courts routinely consider when ruling on motions to dismiss, even if it is not attached to a pleading." *Chesnut*, 971 F. Supp.2d at 1228. In this case, Appellee produced a copy of Plagianes' EEOC Charge as an exhibit in support of its Motion to Dismiss, and Plagianes did not, and does not challenge the authenticity of said Charge. [Doc. 8-2, EEOC Charge].

## I.   THE DISTRICT COURT ERRED BY FINDING THAT PLAGIANES' CLAIMS WERE BARRED FOR FAILURE TO EXHAUST HER ADMINISTRATIVE REMEDIES.

The District Court dismissed Plagianes' ADAAA claims as untimely because it found that Plagianes' failed to demonstrate that she exhausted her administrative remedies as her EEOC Charge was not filed within 180 days of her termination by Appellee. In doing so, the District Court determined that Appellee provided an unequivocal notice of termination to Plagianes via the April 2021 phone call between

14

Appellee's legal counsel and Plagianes, and further, that Plagianes' termination did not constitute a continuing violation. However, the District Court erred by failing to analyze the end of Plagianes' employment as a constructive discharge. Since Plagianes' resignation constituted a constructive discharge for the reasons that follow, and the date of said discharge was July 31, 2021, her claims fall within the 180-day statutory period to file an EEOC Charge. Accordingly, these erroneous conclusions should be reversed.

Under the ADAAA, an employee making a claim of discrimination must first exhaust the administrative remedies by filing a charge of discrimination with the EEOC, and the statute requires that the EEOC charge "shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." *Howard v. City of Coll. Park*, 2023 U.S. Dist. LEXIS 188260, *7-8 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)). Therefore, the employee must file the charge within 180 days of the date of the last alleged unlawful act, or "lose the ability to recover for it." *Id.* at 110-111; *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (explaining that for an EEOC charge of discrimination to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act); *see also E.E.O.C. v. Summer Classics, Inc.*, 471 F. App'x 868, 869-70 (11th Cir. 2012) (explaining that plaintiffs proceeding under the ADA must comply with the

15

same procedural requirements articulated in Title VII, including the duty to exhaust administrative remedies).

In general, a plaintiff must simply allege that all conditions precedent to suit have been met. *See Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982). Where a defendant specifically contests the timeliness of an EEOC charge, the plaintiff carries the burden of demonstrating that the charge was filed on time. *Id.* Accordingly, Plagianes must establish that she timely filed her Charge with the EEOC.

### A. The District Court erred by failing to analyze and subsequently find that the end of Plagianes' employment constituted a constructive discharge.

The District Court determined that Appellee's adverse decision to end Plagianes' employment did not constitute a continuing violation, and further, that the end of Plagianes' employment was unequivocally communicated to her during the April 2021 phone call between Plagianes and Appellee's legal counsel as opposed to the "effective date" of her constructive discharge on July 31, 2021. However, in analyzing the continuing violation doctrine, the District Court erroneously characterized the end of Plagianes' employment as a termination as opposed to a constructive discharge with no accompanying analysis regarding the latter, even though Plagianes specifically alleged that she suffered a constructive discharge in her EEOC Charge, the Complaint and Amended Complaint. [Doc. 1, Compl. ¶ 51; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 60, 96, 112, 113, 118].

16

This is a significant omission by the District Court for multiple reasons, including that "[a] constructive discharge qualifies as *an adverse employment action*" that can satisfy the third element of an ADAAA discrimination claim or the second element of an ADAAA retaliation claim. *Burks v. Wellstar Health Sys., Inc.*, 2024 U.S. Dist. LEXIS 237274, *6-7 (quoting *Menzie v. Ann Taylor Retail Inc.*, 549 F. App'x 891, 894 (11th Cir. 2013) (emphasis in original); *Davis v. Legal Servs. Alabama, Inc.,* 19 F.4th 1261, 1267 (11th Cir. 2021) (explaining that "a constructive discharge is tantamount to an actual discharge, so it constitutes an adverse employment action"); *Brackett v. TSE Indus., Inc.*, 2023 U.S. Dist. LEXIS 226338, *11-13 (The Court found that plaintiff withstood dismissal under Rule 12(b)(6) for purposes of disability discrimination and retaliation under the ADAAA where plaintiff plausibly pled a constructive discharge that qualified as an adverse employment action for said ADAAA claims). In addition, at least one District Court in this Circuit determined that continuing violation cases involving an unequivocal termination are not controlling authority in cases involving constructive discharge allegations, such as here. *See Scott v. Lee County Youth Dev. Ctr.*, 232 F. Supp. 2d 1289, 1294 n. 2 ("The court does not view [*Delaware State College v. Ricks,* 449 U.S. 250, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980) and its progeny] as the controlling authority in this action[]" as *Ricks* addressed a situation where an employee was

17

discharged directly from employment through a clear command by an employer compared to the present case involving a constructive discharge).

Under the continuing violation doctrine, a plaintiff may sue on otherwise time-barred claims if the "defendant's actions violate a plaintiff's rights on a repeated or ongoing basis." *Doe ex rel. Doe #6 v. Swearingen*, 51 F.4th 1295, 1305 (11th Cir. 2022). The doctrine is based on "the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action are or should be apparent." *Hipp v. Liberty Nat'l Life Ins.*, 252 F.3d 1208, 1222 (11th Cir. 2001) (per curiam) (quotation marks omitted). A plaintiff "must identify more than a present harm from a past act to satisfy the continuing violation doctrine." *Doe*, 51 F.4th at 1305. A continuing violation is also "a single violation of an ongoing nature," not a "a series of repeated violations that result in related harms." *Doe*, 51 F.4th at 1306 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)).

However, for claims "based on the *cumulative* effect of individual acts," (that is, hostile work environment or ***constructive discharge claims***), the limitations period runs from date of the last act composing the claim. *Jimenez v. United States AG*, 2025 U.S. App. LEXIS 18028, *22 (quoting *Green*, 578 U.S. at 575 (Alito, J., concurring) (quoting *Morgan*, 536 U.S. at 115)) (emphasis supplied). The Supreme Court further noted that under a constructive discharge claim, so long as the acts

18

were "part of the same, single claim under consideration," the applicable limitations period would only begin to run after the last act occurred. *Id.* at 556-57 (citing *Morgan*, 536 U.S. at 115-21). Here, the District Court erred because Plagianes' resignation constituted a constructive discharge for the reasons that follow, and the date of said discharge was July 31, 2021, therefore, her claims fall within the 180-day statutory period to file an EEOC Charge.

"To prove constructive discharge, the employee must demonstrate that [her] working conditions were so intolerable that a reasonable person in [her] position would be compelled to resign." *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996) (citation and internal quotation marks omitted); *see also Wardwell v. School Bd.*, 786 F.2d 1554, 1557 (11th Cir. 1986). "Moreover, an employer must have been given sufficient time to remedy the situation for an employee to successfully assert that [she] was constructively discharged." *Hernandez v. Prudential Ins. Co. of America*, 977 F. Supp. 1160, 1166 (M.D. Fla. 1997) (citing *Kilgore*, 93 F.3d at 754).

A finding of constructive discharge is appropriate only when a reasonable person would have found the conditions of employment intolerable. *See Hill v. Winn-Dixie Stores*, 934 F.2d 1518, 1527 (11th Cir. 1991); *and see Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1015 (7th Cir. 1997). "In evaluating constructive discharge claims, . . . . [the Court] employ[s] an objective standard." *Hipp*, 252 F.3d

at 1231 (citing *Doe v. DeKalb Cty. School Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998) ("we do not consider the plaintiff's subjective feelings")); *and see Hellums v. Webster Indus., Inc.*, 97 F. Supp. 2d 1287, 1296-97 (M.D. Ala. 1998).

Relevant to Plagianes' ADAAA claims, the Eleventh Circuit also acknowledges that an employer's denial of an employee's request for accommodations could constitute an adverse employment action under the ADAAA and form the basis of a constructive discharge claim. *See Hicks v. City of Tuscaloosa, Alabama*, 870 F.3d 1253, 1258-61 (11th Cir. 2017) (ruling on post-trial motions and upholding jury verdict in favor of plaintiff on constructive discharge claim under Title VII's Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), based upon employer's denial of accommodations in the form of temporary reassignment to alternative duty for breastfeeding employee). Plagianes contends that she suffered a constructive discharge, which solely arises due to Appellee's denials of her reasonable accommodation requests. [Doc. 1, Compl. ¶ 51; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 60, 96, 112, 113, 118].

In *Fowler*, the United States District Court for the Northern District of Georgia was faced with a similar factual situation to the present matter. *See Fowler v. Atlanta Pub. Schs.*, No. 1:18-CV-3362-SCJ-JFK, 2019 U.S. Dist. LEXIS 249362, 2019 WL 13268203, at *17 (N.D. Ga. May 3, 2019), *adopted by* 2019 U.S. Dist. LEXIS 249468, 2019 WL 13268201 (N.D. Ga. July 12, 2019). Specifically, in

*Fowler*, the plaintiff was a teacher for defendant who requested a transfer to a different school due to her disability. *See id.* at 7. While on FMLA leave, plaintiff inquired with defendant about her transfer request. *See id.* Towards the end of her FMLA leave, plaintiff advised that she should not return to work, therefore, she resigned via constructive discharge. *See id.* at 7-8. Ultimately, plaintiff alleged in relevant part that defendant discriminated against her based on her disability pursuant to the ADAAA because the defendant failed to provide her with reasonable accommodation and forced her to resign via constructive discharge, which she further alleged constituted an adverse employment action. *See id.* at 41-42.

In recommending that the defendant's motion to dismiss be denied as to plaintiff's disability discrimination claim based upon constructive discharge, the *Fowler* Court stressed that, "[c]ritically, Plaintiff alleges that her treating medical provider recommended that she not return to work….when her FMLA leave expired for health reasons[,]" therefore, "the allegations in support of constructive discharge speak to more than [Plaintiff's] subjective belief[.]" *See id.* at 40-42.

Here, Plagianes' primary care physician, Dr. Michelle E Cooke, consistently recommended that Plagianes work virtually due to her compromised medical condition and substantial risk of contracting COVID. [Doc. 1, Compl. ¶¶ 29, 35, 41; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 35, 41-42, 48-50]. Dr. Cooke's recommendation was in place through the remainder of the 2020-2021 school year

and was only subject to change based upon the availability of the COVID vaccine and Plagianes receiving two doses of said vaccine. [Doc. 1, Compl. ¶¶ 29, 35, 41; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 48-50]. Since Plagianes was advised by her physician not to return to in-person work, the end of her employment should be deemed a constructive discharge, at least for purposes of surviving dismissal under Rule 12(b)(6). *See Fowler*, 2019 U.S. Dist. LEXIS 249362, at *42 (citing *Twombly*, 127 S. Ct. at 1966-67), *adopted by* 2019 U.S. Dist. LEXIS 249468, 2019 WL 13268201 (N.D. Ga. July 12, 2019).

Moreover, Plagianes' resignation was clearly involuntary because Appellee forced said resignation by "coercion, duress, or misrepresentation of a material fact." *See Williams v. Ala. Dep't of Corr.*, 649 Fed. Appx. 925, 928 (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568). Since "[a]n involuntary resignation constitutes a constructive discharge and qualifies as an adverse employment action[,]" the following analysis further proves that Plagianes suffered a constructive discharge that should have been addressed by the District Court. *See Ross v. City of Perry*, 396 F. App'x 668, 670 (11th Cir. 2010) (per curiam) (citing *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993)).

In evaluating whether a resignation is involuntary, courts consider a variety of factors utilizing a totality of the circumstances analysis. Specifically, the Eleventh Circuit considers factors such as the following:

(1) whether the employee was given some alternative to resignation;
(2) whether the employee understood the nature of the choice he was given;
(3) whether the employee was given a reasonable time in which to choose;
(4) whether the employee was permitted to select the effective date of the resignation; and
(5) whether the employee had the advice of counsel.

*See id*.

Here, in early April 2021, Plagianes received a call from Appellee's legal counsel, who informed Plagianes that she had only three available options regarding her employment with Appellee: 1) resign; 2) medically resign; or 3) be subject to termination. [Doc. 1, Compl. ¶¶ 48-49; Doc. 9-1, Am. Compl. ¶¶ 52-53]. Since Appellee's counsel stated during the April 2021 call that Plagianes only had one (1) day to decide on which option to choose, Plagianes was not "given a reasonable time in which to choose[.]" *See Williams*, 649 Fed. Appx. at 928 (citing *Hargray*, 57 F.3d at 1568). Further, the record does not show that Plagianes "was permitted to select the effective date of the resignation[.]" *See id*. To the contrary, if Plagianes was allowed to select the effective date of the resignation, it stands to reason that she would have selected a much earlier date to allow her to apply for unemployment insurance benefits, which she did not apply for until July 2021. [Doc. 9-1, Am. Compl. ¶¶ 54, 59].

Regarding factors (2) and (5) listed above, Plagianes did not have "the advice of counsel," and, in turn, did not adequately understand "the nature of the choice [she] was given." *See Williams*, 649 Fed. Appx. at 928 (citing *Hargray*, 57 F.3d at

23

1568); [Doc. 9-1, Am. Compl. ¶¶ 56]. The subsequent actions by Plagianes provide additional circumstantial evidence that she did not understand "the nature of the choice [she] was given[]" during her April 2021 phone call with Appellee's counsel. *See id.* Plagianes was financially strained during this time period, which is evidenced by the fact that she had to pay $300/month to retain her health insurance from November 2020 through at least March 2021, and further, because she was most interested in the option that would allow her to obtain unemployment insurance benefits. [Doc. 9-1, Am. Compl. ¶¶ 54, 59]. Yet, Plagianes did not submit a claim for unemployment insurance benefits until on or around July 11, 2021, since that was the earliest in which she understood her employment had ended with Appellee. *See id.*

The remaining factor, whether Plagianes "was given some alternative to resignation[,]" also weighs in her favor. *See Williams*, 649 Fed. Appx. at 928 (citing *Hargray*, 57 F.3d at 1568). While "resignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges[,]" the "one exception to this rule is where the employer actually lacked good cause to believe that grounds for the termination and the criminal charges existed." *See Hargray*, 57 F.3d at 1568 (citations omitted). Said exception clearly applies here. During the April 2021 phone call with Appellee's legal counsel, Plagianes questioned why she would face termination when there were no

disciplinary issues, and in response, Appellee's counsel agreed with Plagianes. [Doc. 1, Compl. ¶ 50; Doc. 9-1, Am. Compl. ¶¶ 54-55].

Based on the foregoing, Plagianes has established that her employment with Appellee ended via constructive discharge. Nonetheless, the date of the constructive discharge is in dispute as the District Court found that "the 180-day exhaustion clock began ticking upon the communication of the decision [in April 2021] and was unaffected by the delayed effectuation." While there is significant case law that stands for the proposition that a constructive discharge occurs on the date an employee communicates the resignation decision to the employer, *see, e.g., Green v. Brennan*, 136 S.Ct. 1769, 1782 (2016), this Circuit has utilized the effective date of resignation as opposed to the date the employee provided notice of resignation to the employer in at least one similar case. *See Chawla v. Emory Univ.*, 1997 U.S. Dist. LEXIS 23595, *26 (In a letter dated September 10, 1993, plaintiff advised defendant that he was resigning, effective October 4, 1993. The Court found that plaintiff's discriminatory claims must have "occurred during the period beginning 180 days before plaintiff filed his [September 3, 1993] charge, and ***ending on the effective date of his resignation*** that is, between March 7,[1993] and ***October 4, 1993***.") (emphasis supplied). Due to this complicated nature of ascertaining "the actual timing of when the constructive discharge 'occurs' for purposes of the 180-day filing deadline," *Scott v. Lee County Youth Dev. Ctr.*, 232 F. Supp. 2d 1289, 1294,

Plagianes' contention that the date of her constructive discharge was July 31, 2021, accepted as true, clearly states a claim for relief that is plausible on its face, therefore, dismissal on these grounds was not warranted.

### B. Equitable tolling should be applied in this case.

The District Court further erred in finding that the alleged termination of Plagianes' employment was objectively unequivocal as communicated by Appellee's legal counsel in April 2021, and relatedly, based on Appellee's conduct, equitable tolling should apply.

The timely filing of a charge of discrimination is not a jurisdictional prerequisite and is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982). The party seeking equitable tolling has the burden of proof. *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755-56, 193 L. Ed. 2d 652 (2016). Here, equitable tolling may be properly considered by the Court. Plagianes prayed for "all legal and equitable relief allowed by law," and regardless, as the party seeking equitable tolling, Plagianes "need not make any allegations about equitable tolling in [her] complaint." *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (citing *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)).

The general test for equitable tolling requires the party seeking tolling to prove (1) that she has been pursuing her rights diligently, and (2) that some extraordinary

circumstance stood in her way and prevented timely filing. *Menominee Indian Tribe*, 136 S. Ct. at 755 (citing *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010)). Equitable tolling may be warranted where the defendant misled the plaintiff into allowing the statutory limitations period to lapse or where the plaintiff had no reasonable way of discovering the wrong perpetrated against her. *See Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993). However, equitable tolling is not warranted where the plaintiff failed to exercise due diligence or where she failed to file her action in a timely fashion, despite knowing (or being in a position to know) that the limitations period was running. *See id*.

Here, Appellee misled Plagianes into allowing the statutory limitations period to lapse, particularly due to the statements by Appellee's legal counsel and the subsequent events between April 2021 and July 2021. As a reminder, Plagianes timely requested a reasonable accommodation from Appellee on or around March 16, 2021 where she sought to either (1) be allowed to work remotely, or (2) be placed on a temporary leave of absence from March 18, 2021 until the date in which she was to receive her second vaccine dose, April 12, 2021, and then immediately return to in-person work. [Doc. 9-1, Am. Compl. ¶ 50]. She communicated this reasonable accommodation request to Breaux, which is the individual she routinely conversed with regarding her prior accommodation requests during the 2020-2021 school year. *See* [Doc. 1, Compl. ¶¶ 27-28, 32-33, 36-38, 41, 47; Doc. 8-2, EEOC Charge; Doc.

27

9-1, Am. Compl. ¶¶ 27, 32-33, 36-38, 41, 49-50]. Nonetheless, the next communication between Plagianes and Appellee occurred in early April 2021, when Plagianes received a call from Appellee's legal counsel. [Doc. 1, Compl. ¶ 48; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 51, 52]. During this call, Appellee's counsel stated that Plagianes had the following three available options regarding her employment with Appellee: 1) resign; 2) medically resign; or 3) be subject to termination. [Doc. 1, Compl. ¶ 49; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶ 53].

Based on the allegations in the Complaint and Amended Complaint, it is clear that Appellee's legal counsel led Plagianes to reasonably believe that she would remain employed by Appellee until a later date, thereby misleading her into allowing the statutory limitations period to lapse. Of note, upon submitting her medical resignation to Appellee's legal counsel on April 12, 2021, Appellee did not have any further communications with Plagianes regarding her employment status until Appellee provided Plagianes with a separation notice in July 2021. *See* [Doc. 1, Compl. ¶ 51; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 57-60]. Further, based on the facts alleged, Plagianes did not apply for unemployment insurance benefits until on or around July 11, 2021, presumably after receiving said separation notice and most likely *because* she finally received documentation from Appellee that definitively confirmed her employment had ended. *See* [Doc. 1, Compl. ¶¶ 46,

28

51; Doc. 8-2, EEOC Charge; Doc. 9-1, Am. Compl. ¶¶ 47, 54, 57-60]. Considering the fact that Plagianes had been struggling financially at the time of the April 2021 phone call, as well as the fact that she chose the medical resignation option, at least in part, because Appellee's legal counsel stated that said option would allow her to apply for unemployment, the strongest explanation for why she waited until July 2021 to actually file for unemployment is because she was misled into believing that her employment with Appellee had not ended until then. *See id*.

In addition, Plagianes reasonably believed that Appellee may revoke the medical resignation and allow her to return to work once she received her second COVID-19 vaccine dose as the basis underlying her medical resignation would have ceased to exist. [Doc. 9-1, Am. Compl. ¶ 58]. Similarly, since Appellee operates on a standard school schedule with the last day of the semester typically ending in May of a given year, it was also reasonable for Plagianes to believe that Appellee would have revoked her medical resignation in time for the following school year. With these reasonable beliefs in mind, Plagianes did not know, nor was she in a position to know, that the limitations period was allegedly running since April 2021. As a result, the filing period for Plagianes' EEOC Charge did not begin to run until she received "unequivocal notice of the adverse employment decision[–]" the July 2021 separation notice. *See Grayson v. K Mart Corp.,* 79 F.3d 1086, 1100 n. 19 (11th Cir.1996) (noting that the EEOC charge filing period does not begin to run until the

29

employee receives "unequivocal notice of the adverse employment decision."); *see also Pearson v. Macon-Bibb County Hosp.,* 952 F.2d 1274, 1279-80 (11th Cir.1992) (holding that trial was necessary to determine the availability of equitable tolling when an employee was told she could resign, apply for a transfer or, if she refused those options, be terminated).

## CONCLUSION

The District Court erred in determining that Plagianes' claims were barred for failure to exhaust EEOC administrative remedies because the end of her employment was a constructive discharge that occurred in July 2021, and further, said constructive discharge was a continuing violation that results in the last discriminatory act falling within the EEOC statutory filing period. The District Court also erred by failing to address Plagianes' separation of employment under a constructive discharge analysis. Finally, Appellee's legal counsel's misleading statements to Plagianes during their April 2021 phone call warrants the application of equitable tolling in this case, which also results in the exhaustion of EEOC administrative remedies. Accordingly, the District Court's findings should be reversed and remanded.

Respectfully submitted,

*/s/ Anthony J. Hall*
Anthony J. Hall, Esq.
Georgia State Bar No. 318028
Jordan P. Rose, Esq.

30

GA Bar No. 851471
THE LEACH FIRM, P.A.
1560 N. Orange Avenue, Suite 600
Winter Park, FL 32789
Telephone: (407) 574-4999
Facsimile: (321) 594-7316
Email: ahall@theleachfirm.com
Email: jrose@theleachfirm.com
***Attorneys for Appellant***

## **CERTIFICATE OF COMPLIANCE**

I hereby certify in accordance with FRAP 32(a)(7)(c) that this brief complies

with the type-volume limitation specified in Rule 32(a)(7)(B). This brief contains

8,440 words.


*/s/ Anthony J. Hall*
Anthony J. Hall, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via electronic filing to all attorneys of record, this 11th day of September 2025.

*/s/ Anthony J. Hall*
Anthony J. Hall, Esq.
